IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KELLEY COLWELL | : | |
| 37 Canterbury Court. | : | |
| Budd Lake, NJ 07828 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No. __22-1047__ |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| INSTITUTE FOR COMMUNITY | : | |
| LIVING, INC. | : | |
| 125 Broad Street, 3rd Floor | : | |
| New York, NY 10004 | : | |
| | : | |
| Defendant. | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.     This action has been initiated by Kelley Colwell ("Plaintiff") against Institute for Community Living, Inc. ("Defendant") for violations of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981), the New York State Human Rights Law ("NYSHRL" - N.Y. Exec. Law §290 *et seq.*) and the New York City Human Rights Law ("NYCHRL" – N.Y.C. Admin. Code §8–101 *et seq.*).[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff intends to amend his complaint to include racial discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000d *et. seq.*) once his claims have been administratively exhausted with the EEOC and the EEOC issues a right-to-sue letter. Any claims under Title VII will mirror his claims asserted herein.

## JURISDICTION AND VENUE

2.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state and city-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.     Alternatively, the United States District Court for the Southern District of New York has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between Plaintiff (a citizen of New Jersey) and Defendant (a New York corporation).

4.     This Court may properly maintain personal jurisdiction over Defendant because of its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

5.     Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Southern District of New York.

## PARTIES

6.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.     Plaintiff is an adult individual, with an address as set forth in the caption.

8.      Defendant is a New York based, non-for-profit, human service agency, which provides counseling programs, community residences, treatment and advocacy services for individuals diagnosed with mental illness, substance abuse, or developmental disabilities.

9.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.      Plaintiff is an African-American male, and was employed in total with Defendant for approximately 22 months.

12.      At all relevant times, Plaintiff was employed by Defendant in the position of Vice President of Information Security.

13.      Plaintiff was supervised during the course and scope of his employment by Dr. Hao Wang ("Wang"), Chief Information Officer ("CIO"). Wang is a non-African American male who is Asian.

14.      During Plaintiff's employment, he was an exemplary employee and manager who at all times worked very hard, long hours and performed exceptionally in his role.

15.      Wang is an overt racist, who subjected Plaintiff and others to discrimination. Plaintiff was ultimately terminated for complaining of racial discrimination under the guise of a job elimination (despite being the only employee subject to a supposed reduction-in-force companywide).

16.     While employed under Wang, Plaintiff was the only African-American at a similar level in leadership under his supervision. Wang knowingly and intentionally treated Plaintiff disparately during his employment by *inter alia*: (a) selectively enforcing policies against Plaintiff; (b) questioning or scrutinizing Plaintiff differently than others; (c) continually exhibiting open hostility, demeaning behavior, and argumentativeness with Plaintiff unlike his peers or colleagues; and (d) by ultimately singling Plaintiff out for a completely manufactured basis for termination (an alleged job elimination which was not corporation-wide, but based upon Wang's own subjective decision <u>following</u> Plaintiff's opposition to discrimination).

17.     Leading up to Plaintiff's termination, Wang reassigned Plaintiff's and others' duties that led to serious delays and internal errors, which caused a tremendous detriment to Defendant's network and information security (to fulfill Wang's self-serving goals of discriminatory and retaliatory behavior).

18.     In the months leading up to Plaintiff's termination, plaintiff engaged in numerous protected activities by expressing concerns of mistreatment for improper or unlawful reasons. The following is only a sampling of such conversations and evidence.

19.     On **October 15, 2021**, a workplace meeting took place amongst Wang, Plaintiff, **and other employees** (which was **recorded**). Therein:[2]

- Plaintiff complained of being singled out repeatedly; Wang responded: "I have to stop this shit" (while having a finger pointed in Plaintiff's face within inches away);
- Wang repeatedly raised his voice and pointed at Plaintiff (Plaintiff stated that he felt "humiliated" and "intimidated");[3]
- Plaintiff stated treatment towards him was "direct discrimination;" and Wang responded "that's bullshit;"

---

[2] With references to any recordings, Plaintiff is referred to in the third-person for ease of reference in the stated or quoted dialogue.
[3] In a private meeting which was recorded between Wang and Plaintiff on October 22, 2021, Wang admitted to repeatedly pointing at Plaintiff and banging on his desk during the October 15, 2021 meeting.

- Wang stated that: he was "not discriminating against" Plaintiff; this is "not about discrimination;" but admitted that he let other people use laptops in meetings unlike Plaintiff;
- Wang admonished Plaintiff about complaining of "discrimination" and stated: "we are 40-50 years old here, we are going down that tube?"
- Wang aggressively asserted: "don't ever tell me I discriminate," "It's BS," "I don't have to discriminate [sic] anyone," "skin to me is neutral, I work with all races," "I have worked with all races," "I am going to end this meeting right now." And he proclaimed multiple times he doesn't discriminate based on "skin," and concluded that "this meeting is over;"
- Wang again admonished Plaintiff and stated: "Kelley don't do this. This is not fair to me or your colleagues" in reference to Plaintiff's complaints of discrimination, "do not participate in my meetings unless you feel you are not discriminated against," "you are accusing me of discrimination;" and
- In ending the meeting shortly after it started after calling Plaintiff's complaints of racial discrimination "bull shit," Wang demanded that Plaintiff return his laptop that was already pre-approved and assigned to Plaintiff and obtain a worse (or lower-budget) one.

20.     *Wang literally stopped the meeting on October 15, 2021 right after it started due to Plaintiff's complaints of discrimination based on race; openly belittled Plaintiff for even raising a legitimate concern to his own manager per company policies; and then demanded that Plaintiff work from a low-budget device, because Wang was so upset with the complaints of discrimination.*

21.     On October 22, 2021, Plaintiff and Wang had a meeting. During that meeting, which **was recorded**:

- Wang told Plaintiff that he was a "coward to tell him he was discriminating him," and "to throw out the d-word is cowardly, if you want to go there, you and I have no end." Wang repeatedly called Plaintiff a "coward" for complaining of "discrimination."
- When Plaintiff raised additional concerns, Wang said: "Will you please just go home and stop working for us." Plaintiff stated: "it doesn't work that way." Wang said "you are consuming our energy very negative," "accusing me," and you are supposed to be "a man," "please go," "I'll talk to HR and end this professionally."

22.     *In the October 22, 2021 conversation, Wang literally <u>admitted</u> that he was going to work with HR to get rid of Plaintiff <u>because of</u> Plaintiff's complaints of discrimination.*

23.     In other recorded discussions, Wang referenced Plaintiff's race; questioned why Plaintiff would be intimidated as a 6-foot, black man; claimed discrimination is a "serious charge;" and accused Plaintiff of using "the d-word" (in reference to "discrimination") and racial complaints out of "convenience."

24.     Wang has *no regard whatsoever* for complaint procedures, company policies, escalation of complaints of discrimination through corporate human resources for an investigation, or engaging in any diplomacy about or concerning an employee's concerns, *even if* he disagreed with such concerns.

25.     Wang is a textbook example of someone who retaliates against employees for raising concerns in a workplace and has admitted to doing so **in multiple recordings**.

26.     Wang repeatedly called Plaintiff a "coward" just for raising concerns of "discrimination;" demanded Plaintiff to stop working immediately because Wang was offended by Plaintiff's complaints of discrimination.

27.     Wang purportedly "eliminated" Plaintiff's position – the only person companywide affected by an alleged reduction in force – in close temporal proximity to Plaintiff's complaints, as a pretext to terminate Plaintiff due to his race and his protected activities.

28.     Wang's discrimination in the workplace was so blatant, it was obvious even to Plaintiff's colleagues. By way of one example only, attached hereto as "Exhibit A" is a Declaration from a former executive who completely corroborates Plaintiff's perspective as to Wang's discriminatory behavior.

29.     Upon termination, Plaintiff was presented with a severance agreement (which he refused to sign) whereby it was requested that in exchange for severance pay, Plaintiff would agree to waive all legal claims for discrimination and retaliation. This was unsolicited, the amount

offered to Plaintiff was not pursuant to any required policy, and it was a pretext to conceal

discrimination. It is well-established that such evidence is admissible for presentation in a

discrimination and retaliation case.[4]

30.     Plaintiff believes and therefore avers that he was subjected to a hostile work

environment and terminated because of his race and/or complaints of race discrimination.

**Count I**
**42 U.S.C §1981 ("Section 1981")**
**([1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

31.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in

full.

32.     Plaintiff was subjected to a hostile work environment during his employment with

Defendant due to his race and/or complaints of racial discrimination through disparate treatment,

pretextual admonishment and demeaning and/or discriminatory treatment towards him.

33.     Plaintiff was ultimately terminated from his employment with Defendant because

of his race and/or because he complained of racial discrimination to Defendant's management.

34.     Plaintiff's race and/or his complaints of  racial discrimination was a motivating or

a determinative factor(s) in the decision to terminate his employment.

35.     These actions as aforesaid constitute violations of Section 1981.

---

[4] *See Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013) (an employer who offered severance at the time of termination when policies did not require such sum upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc*., 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011) (finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was [false]."); *EEOC v. Republic Servs., Inc*., 640 F. Supp. 2d 1267 (D. Nev. 2009) (denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011) (severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by Fed.R.Evid. 408); *Brandy v. Maxim Healthcare Servs., Inc*., 2012 WL 5268365, at *2 (N.D. Ind. 2012) (holding that severance agreements offered at the time of termination do not fall under Rule 408 because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation.").

**Count II**
**New York State Human Rights Law ("NYSHRL")**
**([1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

36.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37.     Plaintiff re-asserts and re-alleges each and every allegation as set forth in Count I of this Complaint, *supra,* as such actions constitute identical violations of the NYSHRL.

38.     These actions as aforesaid constitute violations of the NYSHRL.

**Count III**
**New York City Human Rights Law ("NYCHRL")**
**([1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

39.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40.     Plaintiff re-asserts and re-alleges each and every allegation as set forth in Counts I and II of this Complaint, *supra,* as such actions constitute identical violations of the NYCHRL.

41.     These actions as aforesaid constitute violations of the NYCHRL.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B.     Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law;

E.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable law; and

F.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:      */s/ Adam C. Lease*
         Adam C. Lease, Esq. (Bar # AL4731)
         3331 Street Road
         Two Greenwood Square, Suite 128
         Bensalem, PA 19020
         (215) 639-0801
         alease@karpf-law.com
         *Attorneys for Plaintiff*

Dated: February 7, 2022

# Exhibit A

## <u>Declaration of Andre Ogunusi</u>

1.      I, Andre Ogunusi, am an adult individual, and I make this Declaration under oath, subject to any penalties for false swearing, and based upon the best of my recollection, opinion(s), and observations.

2.      I was employed with the Institute for Community Living, Inc. ("ICL"). I separated from ICL in April of 2020. As of termination, I was a Vice President of Information Technology.

3.      I came to know Kelley Colwell ("Colwell") while working at ICL. In particular, I believe Colwell overlapped my employment by approximately 5 months. During this timeframe, I had an opportunity to work with and interact with Colwell. I had indirectly supervised him during our overlapping tenures.

4.      I found Colwell to be exceptional. He was: (a) very hard working; (b) very bright; (c) very motivated; (d) conscientious; (e) communicative; and (f) from what I knew and observed - - he produced a very good work product. He was also respectful, professional, and appreciated by colleagues, such as myself.

5.      Toward the end of my employment, I was supervised by Hao Wang ("Wang'). I personally believed Wang was offensive, unprofessional, and inappropriate in the workplace. He referred to black people such as me as "brothers" on occasion, referred to a Hispanic professional as the "coffee lady," and he made sexist and racist jokes. I can provide much more detail, but I am only providing a short summary herein.

6.      I do not have a crystal ball, and I am no mind reader. But I did form the opinion that Wang exhibited a bias in the workplace. When I had separated, morale in the department under his supervision was very low. I also find it troubling that I was told my job was eliminated or that I was subject to a reduction in force, but that I was functionally replaced after executing my own severance agreement.

_Andre Ogunusi_
_____
Andre Ogunusi

Date: 11/8/2021
_____